# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLAS SEQUINO,       )
                          )
      Plaintiff,        )
                          )
      v.             )     Civil No. 3:23-cv-145
                          )     Judge Stephanie L. Haines
RICHALAND SCHOOL DISTRICT,  )
RICHLAND TOWNSHIP, RICHLAND  )
FIRE DEPARTMENT, and     )
PENNSYLVANIA HIGHLANDS    )
COMMUNITY COLLEGE,      )
                          )
      Defendants.     )

## OPINION

Pending before the Court are four Motions for Summary Judgment (ECF Nos. 70, 75, 77, 80) filed by the four remaining defendants in this case.[1]  Defendant Richland School District ("RSD"), Defendant Richland Fire Department ("Fire Department"), Defendant Richland Township ("Township"), and Defendant Pennsylvania Highlands Community College ("PHCC") (collectively "Defendants") all assert that Plaintiff Nicholas Sequino ("Sequino") failed to demonstrate any substantive issue of material fact in his Second Amended Complaint (ECF No. 57).  Sequino asserts that Defendants were responsible for an accident caused by traffic barriers that were negligently placed to the side of Academic Avenue.  Sequino, while riding his bicycle to class at the University of Pittsburgh at Johnstown, violently crashed into the barriers causing him catastrophic injuries.

---

[1] Joint Stipulations of Dismissal (ECF Nos. 44, 45) were filed on April 8, 2024, and April 9, 2024, to dismiss LTM Paving Co. and Richland School District School Board from the case.  On April 10, 2024, the Court Ordered these defendants dismissed from the case without prejudice (ECF Nos. 46, 47).

## I.    Introduction

### A.    Procedural History

On September 24, 2024, Sequino filed the operative Second Amended Complaint (ECF No. 57) against Defendants.    Defendants answered (ECF Nos. 59, 60, 64, 65).    A Case Management Conference was held on October 23, 2024 (ECF No. 67), after which the Court issued a Final Scheduling Order (ECF No. 69).    In January 2025, each defendant filed a Motion for Summary Judgment (ECF Nos. 70, 75, 77, 80), Briefs in Support (ECF Nos. 71, 76, 78, 81), and a Concise Statements of Material Facts ("CSMF") (ECF Nos. 72, 73, 79, 82).    RSD also provided Audio/Visual Exhibits on January 2, and March 26, 2025 (ECF No. 101).    The Township filed a Supplement with Exhibits to its CSMF (ECF No. 100).

Sequino filed an Omnibus Response to each defendant's Motion (ECF No. 84), a Brief in Opposition (ECF No. 85), and a Responsive Concise Statement of Material Facts (ECF No. 86) with an Appendix (ECF No. 87).    Sequino also filed Responsive CSMFs to each individual CSMF filed by Defendants (ECF Nos. 88, 89, 90, 91).    Reply Briefs were filed by Defendants (ECF Nos. 94, 95, 98, 104).    The Fire Department filed a responsive CSMF (ECF No. 103).

### B.    Factual Background[2]

On August 25, 2022, RSD submitted a request to the Fire Department to use six jersey barriers owned by the Fire Department.    ECF No. 72, ¶ 6.    The Fire Department approved the request and delivered the barriers to RSD on the same day.    ECF No. 72, ¶ 7.    While the barriers were in RSD's possession, their use and location were controlled solely by RSD, and the Fire Department had no input into how they were used.    ECF No. 73, ¶¶ 10, 11.    There was no written agreement between RSD and the Fire Department related to the loan or use of the barriers.    ECF

---

[2] By and large the pertinent facts set forth derive from RSD and the Township's identical set of facts in their CSMFs (ECF Nos. 72, 73).    The Court cites the RSD document only for simplicity.    Any substantive fact in dispute is noted.

No. 86, ¶ 11.  RSD primarily used the barriers to assist with traffic control during RSD's home football games.  ECF No. 72, ¶ 8.  The Fire Department contests any assertion that it was under an obligation to communicate instructions to RSD for the proper use of the barriers.  ECF No. 102, ¶ 11.  The Richland Police Department employees are employees of the Township and a School Resource Officer ("SRO") from the Police Department provides daily security detail for Richland High School.  ECF No. 86, ¶¶ 4, 5.

On August 10, 2022, RSD contracted with LTM Paving Co. to repave a section of Academic Avenue.  ECF No. 72, ¶ 9.  Academic Avenue is owned, operated, maintained, and controlled by RSD.  ECF No. 72, ¶ 2.  It is a two-lane roadway open to the public that circles Richland High School, ECF No. 72, ¶ 3, but also has ingress and egress rights to allow individuals to access PHCC and the University of Pittsburgh at Johnstown campuses ECF No. 72, ¶ 4.  PHCC does not perform maintenance or engage in any traffic control on Academic Avenue.  ECF No. 82, ¶ 20.  Employees of PHCC, including its President, would by necessity traverse Academic Avenue regularly to get to work.  ECF No. 86, ¶ 3.  Sequino was a student at the University of Pittsburgh at Johnstown at all times relevant to this case.  ECF No. 72, ¶ 15.

Between September 12-16, 2022, RSD maintenance personnel positioned three of the Fire Department's jersey barriers across Academic Avenue to close the Avenue and deter entry of traffic during the paving project.  ECF No. 72, ¶ 10.  On September 16, 2022, when the paving project was completed, RSD re-opened Academic Avenue by removing the jersey barriers.  ECF No. 72, ¶ 11.  The barriers were moved against the curb of Academic Avenue by RSD employees.  ECF No. 72, ¶ 11.  Sequino describes the placement of the barriers as "within the eastbound traffic lane."  ECF No. 86, ¶¶ 17, 18, 19, 20, 22, 23, 24, 26a.  The Fire Department denies this statement.  ECF No. 102, ¶ 18.

The barriers remained against the same curb from September 16, 2022, through October 5, 2022. ECF No. 72, ¶ 13. The placement of the barriers by the curb did not prohibit the flow of traffic or impede traffic in either lane or direction of travel. ECF No. 72, ¶ 14. Security footage shows various types of vehicles freely traversing Academic Avenue during the times that the barriers were against the curb. ECF No. 72, ¶ 14. Indeed, Sequino, himself traveled Academic Avenue from September 16, 2022, through October 5, 2022, without incident. ECF No. 72, ¶ 16. Sequino disagrees that the barriers did not impede the flow of traffic. ECF No. 86, ¶¶ 17-18; ECF No. 95, p. 4.

Sequino states that employees of RSD, the Township, the Fire Department, and PHCC had notice of the location of the barriers by the curb because they would pass the barriers. ECF No. 86, ¶¶ 3, 4, 5, 20, 21, 22, 23. RSD contests the fact that the SRO "had notice" because the SRO only testified that he sometimes used Academic Avenue during his patrols. ECF No. 96, ¶ 5. The Fire Department also contests this statement stating its employees' presence at the high school on Career Night is insufficient basis to say they were on notice of the placement of the barriers. ECF No. 102, ¶ 21; p. 12, ¶¶ 1-4 (stating there were other routes to the high school, which did not require passing the barriers). In addition, the Fire Department asserts that any attendance by firefighters to football games does not establish notice of the barriers along the curb. ECF No. 102, p. 12, ¶ 1.

On October 5, 2022, Sequino was riding his bicycle to attend class at the University of Pittsburgh at Johnstown. ECF No. 72, ¶ 17. There were multiple vehicles traveling around Sequino. ECF No. 86, ¶ 24. The Township and RSD disagree stating there were no vehicles in either travel lane at the location of the barriers when Sequino collided with the barriers. ECF No.79, ¶ 21; ECF No. 72, ¶ 21. In his travels, Sequino made a left turn onto Academic Avenue

and struck the Fire Department's jersey barrier along the curb causing him to sustain personal injuries.  ECF No. 72, ¶¶ 1, 19-20.  The impact of the accident caused Sequino to flip over the handlebars of the bicycle and strike his head against the concrete roadway.  ECF No. 57, ¶ 41. Sequino suffered severe head injuries and other injuries that are permanent and life-limiting.  ECF No. 57, ¶¶ 43, 62.

## II.     Standard of Review

In relevant part, Rule 56 provides:

> A party may move for summary judgment, identifying each claim or defense...on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by...citing to particular parts of materials in the record...or...showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c).

After discovery and upon a motion, Rule 56 requires the entry of summary judgment against a party who "'fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" *Marten v. Godwin,* 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).  An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could decide it for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends*

*Sch.,* 480 F.3d 252, 256 (3d Cir. 2007) (citing *Anderson,* 477 U.S. at 248; *Celotex Corp.,* 477 U.S. at 322-23)).

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue of material fact for trial. *See Celotex,* 477 U.S. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *See Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir. 1989). However, in deciding a Rule 56 summary judgment motion, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences and resolve all doubts in its favor. *See Woodside v. Sch. Dist. of Phila. Bd. of Educ.,* 248 F.3d 129, 130 (3d Cir. 2001); *Santini v. Fuentes,* 795 F.3d 410, 416 (3d Cir. 2015) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). The benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *See Bialko v. Quaker Oats Co.,* 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.,* 44 F.3d 195, 200 (3d Cir. 1995)).

## III.    Analysis

The legal backdrop for three of four motions for summary judgment (RSD, the Township, and the Fire Department (collectively, "Local Agency Defendants")) is that local agencies are entitled to governmental immunity from liability as stated in the Pennsylvania Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, *et seq.* ("PSTCA"). "[N]o local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. It is uncontested that RSD, the

Township, and the Fire Department all benefit from this protection. The issue is whether the actions or inactions of RSD, the Township, or the Fire Department fall within an exception to immunity found at 42 Pa. C.S. § 8542(b). The potentially applicable exceptions in this case are the *Trees, Traffic Controls, and Street Lighting* exception (42 Pa. C.S.A. § 8542(b)(4)), and the *Streets* exception (42 Pa. C.S.A. §8542(b)(6)(i)). As a threshold matter, negligence must first be established by Plaintiff.

### A. Local Agency Defendants

"To succeed on a claim of negligence, a plaintiff must establish the following four elements: (1) the existence of a duty or obligation recognized by law; (2) defendant's breach of that duty; (3) a causal connection between the defendant's breach and the resulting injury; and (4) actual loss or damage suffered by the complainant." *Baker v. Solo Nightclub, LLC*, No. CIV.A. 11-2380, 2013 WL 1927052, at *4 (E.D. Pa. May 9, 2013). The element at issue for consideration is whether a duty was imposed on Defendants as it pertains to the placement of the traffic barriers that arguably caused a dangerous condition.

"The existence of a duty is a question of law for the court to decide. In negligence cases, a duty consists of one party's obligation to conform to a particular standard of care for the protection of another. This concept is rooted in public policy." *Wisniski v. Brown & Brown Ins. Co. of PA*, 2006 PA Super 216, ¶ 7, 906 A.2d 571, 576 (2006).

> In the decision whether or not there is a duty, many factors interplay: The hand of history, our ideas of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall. In the end the court will decide whether there is a duty on the basis of the mores of the community, always keeping in mind the fact that we endeavor to make a rule in each case that will be practical and in keeping with the general understanding of mankind.

> Thus, the legal concept of duty of care is necessarily rooted in often amorphous public policy considerations, which may include our perception of history, morals,

justice and society. The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Id.* (citing *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1168-69 (Pa Sup. Ct. 2000)).  The facts are undisputed that the barriers were owned by the Fire Department but borrowed and under the control of RSD at the time of the accident.  It is asserted by Sequino that Defendants owed a duty of care and were on notice of the dangerous condition because of employees that were on premises.

### 1. *RSD*

RSD owns Academic Avenue, the road traversed by Sequino to school.  In addition, it is RSD's employees who placed the barriers to divert traffic during the paving roadwork and RSD employees who moved the barriers to the side of Academic Avenue when the roadwork was completed.  It is the conduct of RSD and its employees that was most directly linked to Sequino's accident and the RSD employees who most directly could have foreseen the potential harm that could and did occur.  The Court finds that RSD owed a duty to Sequino and imposing this duty upon RSD serves the community by having the party responsible for the roadway and its maintenance be responsible for the safety of persons using the roadway.

### 2. *Fire Department*

The Fire Department owned the barriers and provided the barriers on loan to RSD as was customary.  It did so without providing RSD direction, specification, or training on the use of the barriers.  Sequino argues the Fire Department owed a duty to Sequino by providing guidance to RSD on the use of the barriers.  The Fire Department argues that it didn't have a duty for two

reasons. First, the potential danger from leaving an object within the boundaries of a roadway are open and obvious and a matter of common sense. *See Spowal v. ITW Food Equipment Group, LLC*, 943 F. Supp. 2d 550 (W.D. Pa. 2013) (no duty to warn user of food mixer not to place hand into mixer while paddle still rotating, because knowledge of danger was "ordinary knowledge common to the community"). ECF No. 76, p. 20. Second, because of the open and obvious danger in storing the barriers on the roadway, the Fire Department had no reason to expect that the barriers would be handled in such a way.

With the facts here, the Court finds the relationship between the Fire Department and Sequino to be tenuous and not continuous given the control of the barriers by RSD. This calls any duty of care to Sequino by the Fire Department into question. The Fire Department's conduct pertaining to the barriers is once-removed and therefore the usefulness of the Fire Department providing "training" for the use of the barriers to prevent an accident is unknown. The nature of the risk imposed and foreseeability of the harm incurred by the Fire Department would depend on its notice of the storage location of the barriers. The notice cited by Sequino was dependent upon Fire Department employees passing by during off-duty hours; actual notice would be a question for the fact-finder. Imposing a duty upon the Fire Department under this set of facts could be onerous. Furthermore, it could be ineffective given the one-removed situation. Finally, it might cause the Fire Department to be less likely to share resources as a detriment to the overall public. After consideration of the facts, the Court finds the issue of duty of care/negligence as it relates to the Fire Department to be a genuine issue of material fact best left to the jury.

### 3. Township

The Township's relation to Sequino is more tenuous than the Fire Department in that its only connection to the incident is that it had at least one employee who worked for RSD on a regular

basis in the vicinity of the barriers.  A school resource officer ("SRO") was tasked with ensuring the safety of the students at Richland High School.  The usefulness of the SRO conduct to prevent the accident that occurred is unknown.  Much like the Fire Department, the SRO's presence on the campus as means of providing notice is also a question of fact.  That said, imposing a duty upon the Township/Township employees may have a positive impact for the overall public interest but it would likely be indirect when the Township didn't have direct control over the hazard.  Once again, the duty of care owned to Sequino by the Township is an issue for the fact-finder.

Though there are mixed and inconclusive findings on the issue of negligence, the Court will proceed to its analysis as if negligence has been established for all Defendants.  The Court next analyzes whether the Local Agency Defendants are immune from liability.

### a. Trees, Traffic Controls, and Street Lighting Exception to Immunity

If Local Agency Defendants were negligent in the placement of the barriers on the side of Academic Avenue the Court turns to whether the public entities benefit from the protection of immunity.  Local agencies such as RSD, the Fire Department, and the Township are given broad tort immunity.  *See Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006).  The Pennsylvania Subdivision Tort Claims Act, 42 Pa. C.S. § 8541 et seq. ("PTSCA") states, "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  But Sequino asserts that Defendants fall within exceptions to that immunity.  The *Trees, Traffic Controls, and Street Lighting* Exception is as follows:

**(b) Acts which may impose liability.--**The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(4) *Trees, traffic controls and street lighting.*--A **dangerous condition** of trees, traffic signs, lights or other **traffic controls**, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to

recover must establish that the **dangerous condition** created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had **actual notice** or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. Stat. and Cons. Stat. Ann. § 8542 (West) (emphasis added). The "traffic control" exception "must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability." *Slough v. City of Philadelphia*, 686 A.2d 62, 64 (Pa. Cmwlth. 1996), *aff'd*, 553 Pa. 673, 720 A.2d 485 (1998). The issues in controversy as to this exception is whether, at the time of the accident, the barriers were "traffic controls" that created a "dangerous condition", and Local Agency Defendants were on notice of the dangerous condition such that the immunity from liability would be forfeited by RSD, the Township, and the Fire Department.

Sequino asserts that RSD owned, operated, maintained, and controlled Academic Avenue at all times relevant to this case. ECF No. 57, p. 7. There is no dispute about these facts. Furthermore, it is undisputed that employees of RSD moved the traffic barriers to the curb when the paving project was complete. Sequino alleges that RSD was negligent when it failed to exercise reasonable prudence and due care by placing the traffic barriers within an open lane of traffic on Academic Avenue creating a dangerous condition. ECF No. 57, p. 7. The Court finds that the duty of care, breach of that duty, causation of harm, and harm have been established. Sequino asserts that the Fire Department and the Township were also negligent in that the Fire Department owned the barriers, and the Fire Department and Township were both on notice of the dangerous placement of the barriers on the side of the road and therefore, they breached the duty of care owed to Sequino.

Local Agency Defendants contend that though they may have been negligent, they are not liable for the injuries of Sequino because they are immune from civil lawsuit under PSTCA. They

also assert they are not subject to any exception to that immunity. Local Agency Defendants join

in the argument that at the time of the accident the barriers were not regulating, warning, or guiding

traffic, thus they would not be "traffic controls" under the statute. ECF No. 71, p. 5.[3] Furthermore,

the jersey barriers as situated were not a dangerous condition for which Local Agency Defendants

would have notice. ECF No. 71, pp. 13-14. Sequino disagrees on all points.

### 1.) Were the barriers "traffic controls"?

At the time of the accident the barriers were placed to the side of the road. Local Agency

Defendants argue that even through the barriers were capable of regulating, warning, or guiding

traffic, at the time of the incident they were not regulating, warning, or guiding traffic in any way.

ECF No. 71, p. 8. Local Agency Defendants contend that the barriers were not impeding traffic

and the flow of traffic was progressing normally. Sequino in his Additional Concise Statement of

Material Facts (ECF No. 86) contends that the barriers were moved to "within the eastbound traffic

lane on Academic Avenue" and required motorists to drive at least four feet away from the curb

to suggest the barriers impeded traffic. ECF No. 86, ¶¶ 17-18; ECF No. 95, p. 4. As support for

this contention, Sequino cites to Deposition Testimony of RSD's Director of Maintenance, John

Ribarich (ECF No. 97-4), Interrogatories, and an Expert Report by Geoff Walsh ((ECF No. 87-2)

including exhibits and video at 97-16, 96-17). The Expert Report states that the three portable

traffic barriers were located inside the eastbound traffic lane. "These traffic barriers were located

in excess of two (2) feet inside the travel portion of the eastbound lane." ECF No. 87-2, ¶ 2. RSD

states that Mr. Walsh's report does not state that motorists were required to drive four feet from

the curb and that that statement is not supported by video footage of the crash site. ECF No. 95,

p. 4. Whether the barriers impeded traffic is an issue for the fact-finder and is not consequential

---

[3] For simplicity the Court only cites to RSD Brief in Support of the Motion for Summary Judgment (ECF No. 71).

in the Court's evaluation of whether the barriers were "traffic controls" in any event.[4]  Instead, the Court considers whether the placement of the barriers was intended to divert or control traffic.

In determining whether traffic barriers are properly considered traffic controls this Court finds the analysis in *Redmond v. Dep't of Transp.*, 194 A.3d 229, 238–39 (Pa. Commw. Ct. 2018) instructive.

> While section 8542(b)(4) does not define a "traffic-control signal" or "official traffic-control device," we have previously turned to section 102 of Pennsylvania's Vehicle Code for guidance. The Vehicle Code defines a "traffic-control signal" as "[a] device, whether manually, electrically or mechanically operated, by which traffic is alternatively directed to stop and permitted to proceed." 75 Pa.C.S. § 102. "Official traffic-control devices" are defined as "[s]igns, signals, markings, and devices ... for the purpose of regulating, warning or guiding traffic." *Id.*
>
> In the *Slough* case, we considered whether a median was a "traffic control" for purposes of the "traffic control" exception of section 8542(b)(4). We explained that "[t]he Vehicle Code definitions for traffic control signal and official traffic control device do not include any reference to a median, which is certainly not a device, sign, signal, or marking," and that "[a] median ... is a 'traffic control' in only the broadest sense of the term, acting merely as a means of keeping one lane of travel from running into another." 686 A.2d at 65. As such, we concluded that, "strictly construing the phrase 'traffic control,' as used in the Section 8542(b)(4) exception to governmental immunity, the [c]ity [could not] be liable for the dangerous condition of the median." *Id.*
>
> The same rationale applies in Redmond's case. The traffic signal conduit trench is likewise not a device, sign, signal, or marking that falls within the Vehicle Code's definition of a traffic control device. Strictly interpreting the exception, the conduit trench is also not a "device, whether manually, electrically or mechanically operated, by which traffic is alternatively directed to stop and permitted to proceed." 75 Pa.C.S. § 102. Thus, even if the issue were not waived, we would conclude that the "traffic control" exception to the Tort Claims Act does not apply here.

*Redmond*, 194 A.3d 229, 238–39 (Pa. Commw. Ct. 2018).

---

[4] This discussion does have relevance on whether the barriers created a dangerous condition.

This Court finds the traffic barriers to be like a median or trench in the fact that they are not devices, signs, signals, or markings that fall within the Vehicle Code's definition of traffic control device. As further justification that the barriers do not fit into the definition of "traffic control", at the time of the accident the barriers lay dormant. Their dormancy in acting deliberately to direct the flow of traffic makes them akin to a median or conduit trench. *See cf Crowell v. City of Philadelphia*, 613 A.2d 1178 (Pa. 1992) (holding the City negligent when it erected a sign with a large directional arrow erroneously directing a driver to turn left instead of right causing the driver to strike another vehicle causing fatal injuries.). Thus, strictly construing the phrase 'traffic control,' as used in the Section 8542(b)(4) exception to governmental immunity, and paying deference to that fact that the term "traffic control" must be narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability, the Court finds the Local Agency Defendants are not subject to *Trees, Traffic Controls, and Street Lighting* exception to immunity.

Sequino makes the argument the alleged placement of the barriers within the lane by two feet caused traffic to "maneuver … at least four feet away from the curb to avoid striking the [t]raffic [b]arriers…" ECF No. 85, p. 14. Thus, the traffic barriers were actively regulating, warning, or guiding traffic at the time of the accident. Sequino cites *Camacho v. West Chester Area Sch. Dist.*, 2017 WL 6598593, *3 (Pa. Commw. Ct. December 27, 2017) ("[A]n official traffic control device" specifies a "particular action that a driver must perform."). ECF No. 85, p. 14. The Court finds this proposition to be a misapplication of the law. Traffic controls are placed with the *purpose* of regulating, warning, or guiding traffic. The citation provided by Sequino notes that a control device specifies a particular action. In this case, RSD placed the traffic barriers after their purpose had expired and no purposeful specific action could be gleaned from their placement

on the side of the road.  John Ribarich, the Director of Maintenance Department of RSD, testified

that he moved the barriers to the location on the side of Academic Avenue after the paving project

was done.  ECF No. 97-4, pp. 8-10.  There is no dispute of material fact that the barriers were

moved to that side of the road to purposefully control traffic.

Having found that the traffic barriers do not qualify as traffic controls, the Court need not

further analyze whether the barriers created a dangerous condition or whether defendants had

notice of a dangerous condition as it relates to the *Trees, Traffic Controls, and Street Lighting*

exception to immunity.  As the barriers were not traffic controls when placed on the side of

Academic Avenue, the *Trees, Traffic Controls, and Street Light* exception to immunity does not

apply.

### b.  *Streets Exception to Immunity*

**(b) Acts which may impose liability.**--The following acts by a local agency or any of its
employees may result in the imposition of liability on a local agency:

> (6) *Streets.*--
> (i) A dangerous condition *of* streets owned by the local agency,[5] except that the
> claimant to recover must establish that the dangerous condition created a reasonably
> foreseeable risk of the kind of injury which was incurred and that the local agency
> **had actual notice or could reasonably be charged with notice** under the
> circumstances of the dangerous condition at a sufficient time prior to the event to
> have taken measures to protect against the dangerous condition.
> (ii) A dangerous condition of streets owned or under the jurisdiction of
> Commonwealth agencies, if all of the following conditions are met:
> (A) The local agency has entered into a written contract with a Commonwealth
> agency for the maintenance and repair by the local agency of such streets and the
> contract either:
> (I) had not expired or been otherwise terminated prior to the occurrence of the
> injury; or

---

[5] The Court finds that the *Streets* exception to immunity can only apply to RSD as the language of the exception only applies to the local agency that owns Academic Avenue.

(II) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.

(B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.

(C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa. Stat. and Cons. Stat. Ann. § 8542 (West) (emphasis added). To satisfy the threshold for the *Streets* exception to immunity, RSD must have been on notice of a dangerous condition.

### 1.) Was there a Dangerous Condition?

Sequino argues that a dangerous condition existed and RSD was on notice. As stated above, Sequino's expert Walsh opined that the barriers were within the driving lane by four feet causing traffic to maneuver around the barrier which posed a dangerous condition. RSD contests this assertion stating that the placement of the barriers was not inherently dangerous as Sequino himself passed by the barriers on multiple occasions without incident before the day of the accident. ECF No. 71, p. 14.

RSD argues that if there was a dangerous condition it was not *of* the street, as the exception requires, but rather *on* the street. RSD asserts that caselaw supports the *Streets* exception to immunity applies only when the dangerous condition is *of* the street meaning the defect must involve a physical condition of the street's structure or that is an actual part of the realty within the local agency's right-of-way. *See Gamlich v. Lower Southampton Twp.*, 838 A.2d 843, 846-47 (Pa. Cmwlth. 2003). ECF No. 71, p. 17. *See Osbourne v. Cambridge Twp.*, 736 A.2d 715, 721-22 (Pa. Cmwlth. 1999), *appeal denied,* 759 A.2d 925 (Pa. 2000), *reconsideration denied,* (Pa. Aug. 21, 2000), *cert. denied*, 531 U.S. 1113 (2001) ("Whether a dangerous condition must be 'of' or 'on'

the road has been the subject of numerous cases involving the exceptions waiving immunity for both commonwealth agencies and local agencies relative to real property, highways, streets, and utility facilities.  While there are major differences between them, at the core of them all is that immunity is waived for 'dangerous condition of' the real estate, highway, street, traffic signal or other type of improvement."); *see Mascaro v. Youth Study Ctr.*, 523 A.2d 1118, 1124 (1987) (The Pennsylvania Supreme Court was persuaded "to hold that the real estate exception can be applied only to those cases where it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the acts of others, whose acts are outside the statute's scope of liability." )

> [The] Supreme Court's decision in *Mascaro* … established the test that a "dangerous condition of" the real estate had to be one that was inherent in the property and directly caused the injury. By posing the test this way, the focus of the analysis changed from one that examined whether a "condition" was dangerous to an analysis that determined whether the condition is "of" the property. For example, if there was oil and grease on the public property and someone was injured as a result, that was not within the exception, no matter whether it was a dangerous condition because it was "on" the property but not "of" the property. The change in focus also changed the question from one of fact to one of law. Because the "dangerous condition" was known and because the plaintiff was required to plead it in the complaint, whether it was "of" the real property involved nothing more than a legal interpretation of whether known conduct fell within the words of an exception. Of course, if it was determined to be "of" the property, then it was a question for the fact finder.

*Osborne v. Cambridge Twp.*, 736 A.2d 715, 722–23 (Pa. Commw. Ct. 1999).  Here the barriers cannot be construed as part of Academic Avenue, they were on Academic Avenue. Thus, the Court agrees with RSD that the *Streets* exception to immunity does not apply.

Sequino argues that the cases cited by RSD are not on point and that the barriers became of the street after sitting on the side of Academic Avenue for over three weeks.  ECF No. 85, p. 19.  Sequino makes further argument that because the barriers were heavy, they should be

considered of the street and not simply on the street. Lastly, Sequino asserts that because the barriers were used in maintenance work for the street that by association they should be considered of the street. The Court does not find Sequino's arguments persuasive. It is clear to this Court that the traffic barriers were on the street and not permanent fixtures of or part of the street and thus the *Streets* exception to immunity cannot apply. The Court need not make a determination of whether RSD or any of the Local Agency Defendants were on notice of a dangerous condition caused by the placement of the barriers.

### B. Pennsylvania Highlands Community College

As to PHCC it is not a local agency and therefore, an analysis under the PTSCA is inappropriate. Instead, PHCC argues that it is simply an easement holder of Academic Avenue and does not possess sufficient occupation or control over the property to be held liable in negligence for Sequino's injuries. ECF No. 81, p. 1. In other words, PHCC did not owe Sequino a duty of care.

On April 29, 2021, RSD and PHCC entered into a reciprocal easement agreement ("REA") that provided PHCC with vehicular ingress, egress, and cross-access rights over, along and across Academic Avenue. ECF No. 57, ¶¶ 18-19. It was not involved in the loan or placement of the barriers. ECF No. 82, ¶ 18. PHCC does not perform maintenance on Academic Avenue, nor does it engage in any traffic control. ECF No. 82, ¶ 20. Sequino's accident site is squarely within the property boundaries of RSD under the REA. ECF No. 82, ¶ 26. Sequino was never a student at PHCC. ECF No. 82, ¶ 2. The REA contains language that makes RSD and PHCC each responsible for the maintenance of their own property, which in the case of PHCC was only its own parking lot. PHCC was not responsible for Academic Avenue. ECF No. 82, ¶¶ 32-34. The REA also states

that "[e]ach owner ... indemnifies and saves the other Owner harmless from any and all liability....occurring on or from its own lot..." ECF No. 82, ¶ 33. These facts are uncontested.

Sequino argues that PHCC maintained ingress and egress easement over Academic Avenue and an easement holder is generally considered a possessor of the property and is required to maintain its easement. ECF No. 85, p. 24. Sequino further argues that whether PHCC is a possessor of the land is a question for the fact-finder. ECF No. 85, p. 25 (citing *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667 (Pa. 2005); *Tosto v. Giant Food Stores, LLC*, 2015 WL 7300565 (Pa. Super. Ct. Apr. 2, 2015); *Leichter v. E. Realty Co.*, 358 Pa. super. 189, 193 (1986).

While this Court acknowledges that the case law cited is supportive of Sequino's assertion that possession is a determination of fact not law, Sequino fails to address the uncontested facts that are supportive of PHCC's position. PHCC and Sequino agree that the easement was for purposes of ingress and egress which is laid out in the terms of the REA along with other terms that have bearing on this case. Interpretation of the REA is a question of law for consideration by the Court.

The Court in *Leichter* stated,

Whether a particular issue is to be confronted as a question of law and, therefore, is one to be decided by the court, or whether it is a question of fact to be resolved by a jury, is, once the study moves beyond the routine and obvious, a most troublesome inquiry upon which there has been a dearth of decision.

Although it was not the principal holding in the case, our Supreme Court did suggest some years ago that the issue of whether an easement holder is a "possessor" is a question for the fact finder. *Cooper v. City of Reading,* 392 Pa. 452, 140 A.2d 792 (1958). There, our Supreme Court stated:

The identity of the owner of the canal bed at anytime in the last fifty years is not divulged, nor the terms of the original easement, but the city had an easement. That is not denied; it is used continuously, and by fair inference has never been disturbed. The city possessed the ordinary power of an easement holder to secure and make

safe its exercise of rights, and for that purpose to enter the bed at the spot of discharge, and make reasonable alterations or repairs. The city completely controlled the land upon which the pool was located by the manner in which it exercised its easement. 140 A.2d at 796.

While this statement of our Supreme Court cannot be considered a clear and firm pronouncement of principle, it lends support to our conclusion that the question of whether an easement holder exercised requisite control and possession is a determination for the fact finder and requires examination of the underlying facts as revealed by the evidence. In any event, our analysis of the issue and reflection upon the practical effect of our ruling causes us to decide that the issue of whether or not an easement holder is a "possessor" of land, presents a mixed question of law and fact which is within the province of a jury to decide after, of course, the trial court has in careful patient expression instructed the jury upon the applicable law.

*Leichter,* 516 A.2d at 1249–50. Though *Leichter* found that presenting the question to the jury in its case was necessary given the facts, it left open the possibility that the issue could be decided by the Court if the facts so allowed, as they do here. It is also noteworthy on a substantive level to compare the easement holder in *Leichter* who controlled the land and had rights to alter and repair the land which PHCC did not have for Academic Avenue. Here we have a contract that clearly laid out the terms of the ownership, possession, maintenance, and liability for Academic Avenue and all those rights belonged to RSD, not PHCC.

Finally, the Restatement (Second) of Torts, Section 328E, defines "possessor of land" as:

(a) a person who is in occupation of the land with the intent to control it or
(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

*Stanton v. Lackawanna Energy, Ltd.,* 584 Pa. 550, 566, 886 A.2d 667, 677 (2005). PHCC did not occupy the land with intent to control it. RSD both in practice and according to the REA occupied

the land and controlled and maintained it, thus making RSD the possessor.  This Court finds that

PHCC did not possess the land and therefore it had no duty to Sequino under negligence theory.[6]

**IV.    Conclusion**

Viewing the facts in the light most favorable to Sequino as the nonmoving party and

drawing all reasonable inferences and resolving all doubts in Sequino's favor, the Court finds that

Plaintiff has failed to present sufficient facts and evidence for a *prima facie* case of liability as to

any Defendant.

The Local Agency Defendants (RSD, the Fire Department, and the Township) are immune

from liability as stated in the Pennsylvania Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, *et*

*seq.* and neither the *Trees, Traffic Controls, and Street Lighting* or the *Streets* exceptions to

immunity applies to them.  PHCC owed no duty to Sequino as it had no control over Academic

Avenue or the traffic barriers, therefore, the elements of negligence cannot be proven.  RSD's

Motion for Summary Judgment (ECF No. 70), Richland Fire Department's Motion for Summary

Judgment (ECF No. 75), Richland Township's Motion for Summary Judgment (ECF No. 77), and

PHCC Motion for Summary Judgment (ECF No. 80) are, therefore, GRANTED.


Dated: September 30, 2025


/s/ *Stephanie L. Haines*
Stephanie L. Haines
United States District Judge

---

[6] Having found PHCC did not possess Academic Avenue, notice need not be addressed.